UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| VALBRUNA STAINLESS, INC., | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | CASE NO. 1:09-CV-351 |
| | ) | |
| v. | ) | |
| | ) | |
| CONSOLIDATED PIPE & SUPPLY COMPANY, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Valbruna Stainless, Inc. ("Valbruna"), filed this breach of contract action against Defendant Consolidated Pipe & Supply Company, Inc., d/b/a Consolidated Power Supply ("Consolidated") on December 15, 2009 (the "Indiana Suit"), just two days after Consolidated sued it for breach of contract in the United States District Court for the Northern District of Alabama. *See Consol. Power Supply v. Valbruna Stainless, Inc.*, No. 2:09-cv-02496 (N.D. Ala. filed Dec. 11, 2009) (the "Alabama Suit"). The parties do not dispute that the two federal suits involve the same parties, issues, and transactions, and thus that they are duplicate suits.

Now before the Court is a motion to stay filed by Consolidated under the first-to-file rule (Docket # 11), requesting that the Court stay this second-filed Indiana Suit until a motion to dismiss filed by Valbruna in the first-filed Alabama Suit is ruled upon. Valbruna, however, asserts that the Court should disregard the first-to-file rule and view the Alabama Suit as a pre-emptive strike by Consolidated, and deny its motion to stay the Indiana Suit.

For the following reasons, Consolidated's motion to stay will be GRANTED.

## II. FACTUAL AND PROCEDURAL HISTORY

During 2008, Consolidated, a supplier of pipes and materials based in Birmingham, Alabama, ordered various steel bars via purchase orders from Valbruna, a manufacturer of steel products located in Fort Wayne, Indiana. (Compl. §§ 1, 2, 8-10; Mathias Aff. ¶ 4.) Valbruna then sent Consolidated the steel bars and invoiced it for the purchase. (Compl. §§ 12, 13; Mathias Aff. ¶ 5.) Consolidated paid for some, but not all, of the steel bars, and Valbruna contends that Consolidated still owes it $149,960.60 for the materials. (Compl. § 14.)

Consolidated, however, contends that problems with the quality of the steel bars and the timeliness of their delivery began to emerge in early 2009, and that this caused Consolidated significant problems with its end user, Westinghouse. (Mathias Aff. ¶¶ 5, 7-9, Ex. A.) Consolidated catalogues numerous discussions it had with Valbruna from January through August 2009, in which it expressed its dissatisfaction with Valbruna's timeliness and product quality. (Mathias Aff. ¶¶ 10-13, Ex. A.) This apparently culminated in an August 25, 2009, visit by two Valbruna employees to Consolidated's Birmingham office to discuss the problems, in which Consolidated's General Manager, Mark Mathias, stated: "If we can't settle this out, then obviously we will have to go to court." (Mathias Aff. ¶ 13.)

About one month later, on September 29, 2009, Valbruna's attorney sent a demand letter to Consolidated seeking $200,241.26 for the outstanding invoices, stating that it must pay that amount in order "[t]o avoid the commencement of a lawsuit". (Heck Aff. ¶ 5, Ex. A.) Consolidated's counsel then responded via letter on October 15, 2009, stating that there were "significant problems" with Valbruna's steel bars that "required corrective measures resulting in additional expense and loss of business" to Consolidated. (Heck Aff. ¶ 6, Ex. B.) On November

6, 2009, Valbruna's attorney sent Consolidated a final demand letter. (Heck Aff. ¶ 8, Ex. D.) Consolidated's counsel responded the following week, stating that it believed it was "more than a collections matter" and "that it was premature for either party to commence legal proceedings at this point." (Heck Aff. ¶ 9, Ex. E.)

On November 30, 2009, Valbruna's attorney sent Consolidated a settlement offer, seeking $179,960.60 from Consolidated within fifteen days. (Heck Aff. ¶ 10, Ex. F.) Ultimately, Consolidated made a "good faith" payment of $50,000 to Valbruna to encourage further settlement discussions and to extend the settlement offer until December 21, 2009. (Heck Aff. ¶¶ 14, 15, Ex. H; Mathias Aff. ¶ 15.)

On Friday, December 11, 2009, the parties and their counsel held a conference call to work toward resolution of the dispute. (From Aff. ¶ 3; Heck Aff. ¶ 16; Mathias Aff. ¶ 16.) During the call, Consolidated made a settlement offer over and above the $50,000 payment it had made on December 7. (Mathias Aff. ¶ 17.) Valbruna, however, did not budge from its November 30, 2009, offer of $179,960.60. (Mathias Aff. ¶18.) Mathias, Consolidated's representative on the call, stated that he would discuss the offer with Consolidated and get back to Valbruna. (From Aff. ¶ 4.) Instead, Consolidated filed the Alabama Suit two hours later. (From Aff. ¶ 6; Mathias Aff. ¶ 19.)

On Monday, December 14, 2009, Consolidated sent an email and a courtesy copy of the complaint to Valbruna's counsel, expressing its disappointment with the position Valbruna took during the conference call and stating that it "did not see much value in continuing a letter campaign among the attorneys." (Heck Aff. ¶ 17, Ex. I.) Valbruna filed this Indiana Suit the next day. (Docket # 1.)

3

On February 8, 2010, Valbruna filed a motion to dismiss in the Alabama Suit, alleging that the court lacked personal jurisdiction over it. (Heck Aff. ¶ 19, Ex. K.) That same day, Consolidated filed the instant motion to stay here. (Docket # 11.)

### III. APPLICABLE LAW

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "In deciding whether to enter such a stay, courts consider the following factors: (i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Id.* (citing *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, No. 03 C 7822, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004)). "'[I]f there is even a fair possibility that the stay . . . will work damage to some one else,' the party seeking the stay 'must make out a clear case of hardship or inequity in being required to go forward.'" *Id.* (quoting *Landis*, 299 U.S. at 255).

"Courts . . . have recognized that when two related cases are pending in separate federal courts, either of those courts may exercise that inherent power to stay the proceedings before it in deference to the related action." *Id.* Indeed, the court has a duty to avoid duplicative litigation. *Id.* (citation omitted). Therefore, the Seventh Circuit Court of Appeals has articulated that a district court has "an ample degree of discretion" in deferring to another federal proceeding involving the identical parties and issues to avoid duplicative litigation. *Id.* (citing *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995)).

4

## IV. DISCUSSION

As stated earlier, the parties do not dispute that the Indiana Suit and the Alabama Suit are duplicate suits. *See Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (explaining that lawsuits are duplicate when "claims, parties, and available relief do not significantly differ between the two actions"). Under these circumstances, Consolidated asserts that the "first-to-file" rule instructs this Court to defer judgment to the forum of the Alabama Suit.

"When duplicative actions are filed in different federal courts, 'the general rule favors the forum of the first-filed suit.'" *Pfizer*, 640 F. Supp. 2d at 1007 (quoting *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 832 (N.D. Ill. 2004)); *see also Essex Group, Inc. v. Cobra Wire & Cable, Inc.*, 100 F. Supp. 2d 912, 914 (N.D. Ind. 2000). "[D]istrict courts normally stay or transfer a federal suit for reasons of wise judicial administration whenever it is duplicative of a parallel action already pending in another federal court." *Pfizer*, 640 F. Supp. 2d at 1007 (citation omitted). "However, the presumption in favor of the first-filed suit is not absolute." *Id*. (internal quotation marks and citations omitted); *see Trippe Mfg. Co.*, 46 F.3d at 629 (stating that the Seventh Circuit Court of Appeals has never rigidly applied the first-to-file rule); *Essex Group*, 100 F. Supp. 2d at 914 (same).

That is, "'[n]o mechanical rule governs the handling of overlapping cases,' and therefore 'the judge hearing the second-filed case may conclude that it is a superior vehicle and may press forward.'" *Pfizer*, 640 F. Supp. 2d at 1008 (quoting *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 838 (7th Cir. 1999)). In fact, the Seventh Circuit Court of Appeals has "expressly disfavored applying the [first-to-file] rule where . . . [a] declaratory judgment action, though filed first, is filed in anticipation of litigation by the other party." *Eli's Chicago Finest, Inc. v.*

5

*Cheesecake Factory, Inc.*, 23 F. Supp. 2d 906, 908 (N.D. Ill. 1998) (collecting cases)*; see also Essex Group*, 100 F. Supp. 2d at 914 (collecting cases).

"Nevertheless, where deference to the first-filed action is consistent with considerations of judicial and litigant economy, and the just and effective disposition of disputes, the first to file rule provides courts seeking to avoid duplicative litigation with some guidance." *Pfizer*, 640 F. Supp. 2d at 1008 (internal quotation marks and citation omitted); *see also Serlin*, 3 F.3d at 223 (explaining that favoring the first-filed action is prudent where doing so constitutes "wise judicial administration"); *see generally Fed. Cartridge Co. v. Remington Arms Co.*, No. Civ. 03-6105-ADMAJB, 2003 WL 23101805, at *2 (D. Minn. Dec. 31, 2003) (explaining that "absent compelling circumstances the first-filed action should take precedence").

Here, Valbruna asserts that the Court should decline to follow the first-to-file rule and allow the Indiana Suit to go forward, contending that Consolidated filed the Alabama Suit in bad faith as a "calculated pre-emptive strike." (Resp. Br. 4); *see generally Fed. Cartridge*, 2003 WL 23101805, at *2 (articulating that a flexible approach to the first-to-file rule is desirable to discourage "Pearl Harbor tactics" and facilitate settlement negotiations). Valbruna elaborates that it notified Consolidated in its September 29 and November 30 letters that litigation was likely if payment was not received, but that it held off on filing suit because of Consolidated's willingness to participate in settlement discussions. In particular, Valbruna emphasizes that during the December 11 telephone conference, Consolidated made every indication that it was considering the proposals and that it would get back with Valbruna. (Resp. Br. 4-5.)

Instead, Consolidated filed the Alabama Suit less than two hours after the telephone conference ended. (Resp. Br. 4-5.) As Vabruna sees it, Consolidated's first-filed status should

6

be ignored and its motion to stay denied, or it "will be rewarded for creating the impression that it was considering a settlement proposal . . . while it was preparing its lawsuit and racing to the courthouse." (Resp. Br. 5); *see Essex Group*, 100 F. Supp. 2d at 915 (identifying the policy reasons for a dismissal of a first-filed declaratory judgment action as prohibiting a "race to the courthouse", encouraging settlement, and discouraging costly duplicate litigation) (citation omitted).

The Court declines Valbruna's plea to disregard Consolidated's first-filed status. To explain, the record shows that Consolidated voiced its dissatisfaction with Valbruna's performance under the purchase orders as early as January 2009, that is, *eight months before* Valbruna ever sent Consolidated the demand letter and threatened litigation. Indeed, evidence of Consolidated's dissatisfaction is catalogued on an almost monthly basis in 2009, and Valbruna makes no effort to dispute this evidence. Nor does Valbruna challenge Consolidated's assertion that Valbruna's issues with timeliness and product quality ultimately caused Consolidated problems with its end user, Westinghouse.

Valbruna also does not challenge Consolidated's evidence that it, rather than Valbruna, was actually the first party to threaten litigation when it raised the prospect of a suit at the August 25, 2009, meeting between the parties. And, as Consolidated astutely emphasizes, the cases that Valbruna cites in support of its plea to disregard the first-to-file rule all center on declaratory judgment actions. *See generally Essex Group*, 100 F. Supp. 2d at 914 (collecting cases and articulating that the Seventh Circuit has "expressly disfavored" applying the first-to-file rule in instances where a declaratory judgment action is filed in anticipation of litigation by the other party). Here, Consolidated seeks damages for breach of contract in the Alabama Suit,

7

rather than a declaratory judgment. Thus, on this record, it simply cannot be concluded that the Alabama Suit was filed merely in anticipation of litigation by Valbruna. *Cf. Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 757 (7th Cir. 1987) (concluding that the filing of a declaratory judgment action was merely a pre-emptive strike by plaintiff to secure venue in anticipation of litigation by defendant); *Essex Group*, 100 F. Supp. 2d at 916 (same).

Furthermore, Consolidated filed the Alabama Suit after engaging in weeks of settlement discussions with Valbruna and only after it perceived that further negotiations would be futile in light of Valbruna's failure to budge from its initial settlement offer. *Cf. Eli's Chicago Finest*, 23 F. Supp. 2d at 909 (disregarding the first-to-file rule where plaintiff responded to defendant's accusation of trademark infringement by rapidly filing suit rather than contacting defendant for purposes of negotiations). And rather than delay service, Consolidated promptly notified Valbruna that it had filed the Alabama Suit. *Cf. Diversified Healthcare, Inc. v. NJ Morgan Assocs., Inc.*, No. EV 00-233-C-M/H, 2001 WL 405592, at *5 (S.D. Ind. Mar. 28, 2001) (finding that plaintiff's suit bore the indicia of a pre-emptive strike where it delayed serving defendant with process and instead continued settlement negotiations).

In sum, as stated earlier, "when duplicative actions are filed in different federal courts, 'the general rule favors the forum of the first-filed suit.'" *Pfizer*, 640 F. Supp. 2d at 1007 (quoting *Schwarz*, 317 F. Supp. 2d at 832); *see also Essex Group*, 100 F. Supp. 2d at 914. Here Valbruna has failed to produce evidence sufficient to convince this Court to deviate from the general rule and deny the motion to stay. *See Serlin*, 3 F.3d at 223 (explaining that under the first-to-file rule, the second action is normally dismissed, stayed, or transferred).

Furthermore, the three factors to be examined when deciding whether to issue a stay

weigh in favor of granting Consolidated's motion. The stay that Consolidated seeks is of limited duration, that is, only until Valbruna's motion to dismiss is ruled on in the Alabama Suit, and it was requested at the outset of the litigation before discovery ever commenced. Consequently, there is no indication that a stay will unduly prejudice Valbruna. *See Pfizer*, 640 F. Supp. 2d at 1007. And undoubtedly, the stay will reduce the burden of litigation on the parties and court, as "[t]here simply is no reason for identical actions . . . to proceed simultaneously in two federal courts." *Id*. at 1008. "Moreover, in addition to consuming the limited resources of the judiciary, allowing both actions to proceed simultaneously presents the risk of conflicting decisions." *Id*.

As a result, the first-to-file rule is consistent with principles of "wise judicial administration" in this instance, *id.* at 1009 (quoting *Schwarz*, 317 F. Supp. 2d at 833), and therefore it will not be set aside. Consolidated's motion to stay the second-filed Indiana Suit will be GRANTED.

## V. CONCLUSION

For the foregoing reasons, Defendant Consolidated Pipe & Supply Company, Inc.'s motion to stay (Docket # 11) is GRANTED, and this action is STAYED until the motion to dismiss filed by Valbruna in the Alabama Suit is ruled upon.

SO ORDERED.

Enter for the 9th day of March, 2010.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge